May it please the Court, Jesse Welch Keezer, admitted law student, appearing today under the supervision of Catherine Davis and Peter Afrasiabi, as court-appointed pro bono counsel on behalf of Appellant Keenan Wilkins. With the Court's permission, I'd like to reserve five minutes of my time for rebuttal by my colleague, Eric Ochoa, also an admitted law student. You can have whatever time you want, Counselor, but we'll give you the business nonetheless. Thank you, Your Honor. This Court's reversed for two reasons. First, it is undisputed that Mr. Wilkins had an unfettered right to vote in 2008, 2009, and 2010, and thus the District Court erred in holding Mr. Wilkins had no constitutionally protected right to vote. And second, the District Court failed to provide sufficient procedural protections to Mr. Wilkins in his District Court proceedings as provided by this Court's en banc decision in Rand v. Rowland. And further, the Court also denied Mr. Wilkins the opportunity to fully pursue discovery before considering and granting the jail official's summary judgment motion. This Court specifically asked for briefing and oral argument on the issue of whether a plaintiff who has been convicted for a felony no longer has a fundamental right to vote under the United States Constitution, even though this plaintiff is entitled to vote under California law. Respectfully, this Court should reverse the District Court's decision because Mr. Wilkins suffered arbitrary treatment at the hands of the jail officials, treatment that was not only unsupported by state law, but also was a violation of state law and prison regulations. Well, Mr. Welch-Kaiser, aren't we bound by Harvey? You say your client had a fundamental right to vote. It seems like Richardson's Supreme Court case and our case of Harvey affects your argument in that it seems that it's more of a statutory benefit than a fundamental right. No, Your Honor. There's one important distinction between our case and Richardson and Harvey in that Mr. Wilkins had already had his right to vote restored. And Harvey and Richardson, the plaintiffs challenged the disenfranchisement scheme or the reenfranchisement mechanism. But California automatically – Well, but didn't they say specifically in Harvey that we interpret that as a statutory benefit? Let's just – your client was reenfranchised, correct? Yes, Your Honor. He's in the detention facility. He's seeking ballots to vote. He alleges that he was affected in getting his ballots to the appropriate officials. But it seems that Harvey still – the underlying holding there is that a person in your client's category was reenfranchised, but we interpret – we have to interpret that to see if he actually had a fundamental right to vote or whether that was a statutory benefit. And I'm still not appreciating the difference in light of the language in Harvey. Yes, Your Honor. In Harvey, as I mentioned, the plaintiff was challenging the reenfranchisement mechanism that was based on having to pay the criminal restitution sentencing fees. Here, California has no such requirements. So Mr. Wilkins already had his right to vote restored. It was not challenging the mechanism that allowed him to receive that. Just a minute. You're not quite addressing my colleague's question. Harvey says, and I quote, the right to vote is not a fundamental right. It is a mere benefit that Arizona can choose to withhold entirely. Therefore, we do not apply strict scrutiny. But the predicate of that is there is no fundamental right here. This is a statutory benefit. Now, it does go on and say that even a statutory benefit can run afoul of equal protection, but it doesn't say there's a fundamental right, and that's what my colleague is really putting to you. Yes, Your Honor. And the Supreme Court has indicated that the individual citizen has no federal constitutional right to vote unless and until the state extends that right to individuals. And when the state legislature vests the right to vote in its people, the right to vote as the legislature has prescribed is fundamental. The difference between Harvey is that the state had not yet extended that right to vote to the plaintiff. Here, just like the state could choose to not extend the right to vote to myself even, once the state does do so, it becomes the constitutionally protected right to vote. The statutory benefit is the reenfranchisement scheme that was challenged, and that is what our position is that this is how our case is distinguishable from Harvey, in that Mr. Wilkins had an unfettered right that the state had already extended. And as the Supreme Court has held, it's once the right is extended, it becomes the constitutionally protected right. Let me test your theory, okay? It's a little off what we're talking about. Suppose a person commits maybe the most egregious felony you can think of in California, and suppose California says we never take away felons' rights to vote. We just don't do it in California. Or after he's served his 50 years and he gets out, we'll give it back to him. But he moves to Florida, let's say, and Florida's law says felons don't get a right to vote, period. Is he precluded from voting in Florida? Because states always control the qualification of voting, yes, Your Honor, he would be precluded from voting in Florida. There are two states, Vermont and Maine, that do not disenfranchise felons. Felons in those states do have the right to vote because the state determines voter qualifications. It doesn't matter that his felony is committed in the state that does restore his right to vote, at least right now. So his fundamental right isn't really fundamental across the whole reach of the U.S. Constitution. It's only fundamental that he's in California. Assuming he leaves California, he's lost it, correct? Yes, Your Honor. The right to vote is unique in that way. The state always has to extend that right to the individual citizen. If the states can make it different, how is it fundamental? The right to vote is unique in that way, Your Honor. The individual citizen, as the Supreme Court has held, has no individual right to vote until the state chooses to extend that right to an individual. If I know more or less. Go ahead. Not exactly right, is it? The state chooses to extend the right to vote to an individual. The state could return to a system of electors, and the Supreme Court has acknowledged that that is the right of states to do so. But history has favored the voter. And the protections of the right to vote themselves are that the franchise once granted may not be drawn or conditioned on lines that are inconsistent with the equal protection clause of the 14th Amendment as the. . . If I disagree with you, is your case over? No, Your Honor. Our position is still that our equal protection claim remains. The district court. . . So there's an equal protection claim then based on the statutory benefit? Our position would be that it would first be on the right to vote. If I disagree, I'm giving you that hypothetical now. Yes, Your Honor. Just like your teacher at Irvine, I'm giving you a hypothetical you don't like. If you don't like that, then is your argument done? The equal protection claim would remain, which the district court considered sua sponte. It was not moved upon by the jail officials here. And Mr. Wilkins did not have notice that that was at issue. In its original order directing service, the court recognized explicitly that Mr. Wilkins had stated a cognizable claim for his right to equal protection under the law. And you can find that on page 15 in the first volume of the excerpts. The court had indicated to Mr. Wilkins he had actually stated a cognizable claim for equal protection. But then in considering the jail official's summary judgment motion, considered again sua sponte. And without providing the proper notice to Mr. Wilkins and without providing him leave to amend, dismissed that. Do you allege any place in your complaint? I suspect you didn't do the complaint because you're just here on appeal. That's correct. Was it ever alleged that your client was in a protected class? Well, no, Your Honor, but. . . It wasn't alleged, was it? The statute. . . It wasn't even alleged that he was similarly situated to others, was it? That was alleged, Your Honor. Mr. Wilkins indicated that other inmates did not receive ballots, while some, and he names at least two, Hampton and Menifee, among others. . . And he alleged he was similar situated with those. The distinction here that would be drawn is but for his status as a pretrial detainee, he would have been able to vote. If he were outside, like myself, and able to go to a polling place, he would not have had any issues voting under California law. He was qualified and had an unfettered right to vote. But for the jail official's interference with his exercise of that right, he would have been able to cast his vote. How do you read a procedural due process claim into the amended complaint? Because I don't see, or he doesn't mention in his amended complaint, a denial of due process in terms of fair procedures, does he? Or maybe I missed it. On the court's order directing service, it recognizes that he stated a cognizable claim for his right to due process and liberally constraining a pro se litigant, pro se prisoner of detained litigants, pleading this, our position is that that was sufficient to show that he felt his right to vote was withheld from without the sufficient due process notice or hearing that he would not be allowed to. It was sufficiently stated there. And if the right to vote argument is rejected, as Judge Smith suggested, then it would not be subsumed into that particular analysis. Do I have any evidence in this record that the sheriff or the deputies or anybody else conspired to preclude your client from voting? Your Honor, he did state allegations that would support that and the actions. I saw negligence written all over what he said. But conspiring to preclude? My worry is that there aren't allegations in the complaint which go to that allegation. The repeated pattern, Your Honor, of interfering with his right to vote shows not just simple, so it's not just negligence, but the repeated pattern of forms being returned, insisting he didn't sign them when he claimed he did or didn't check the right box when he claimed he did. This would support that particular claim he made. If there are no further questions, I'd like to see the rest of my time to my colleague for rebuttal. Well, are you going to have somebody else come up for rebuttal? Yes, my colleague. I should have hit you with a lot more questions. Thank you. Go ahead. May it please the Court. Mike Wenzel, Bertrand, Fox, and Elliott on behalf of the County of Alameda defendants. I don't want to belabor the point that the Court has already raised. I had intended to address Harvey and quote the exact passage already quoted, so unless the Court has any questions, particularly for me on the Harvey case, I have nothing to add above and beyond what the Court already quoted in terms of this being a statutory benefit, not a fundamental right to vote. And so given a statutory benefit can run afoul of the Equal Protection Clause, which is the next sentence after the stuff you were going to quote to me, how do I give your client a victory on equal protection given what happened here? For two reasons. First, notwithstanding the District Court's order of service, I don't see a Section 1 equal protection claim in this complaint. The District Court's order found that there was a right to vote, a due process, and an equal protection claim stated. In moving for summary judgment, the county defendants presumed that by an equal protection claim, the Court was referring to a Section 2 equal protection claim regarding a felon's right to vote. Regarding due process, similarly, we presumed that. Well, before you get to this good argument, did the defendants ever move for summary judgment on the claim of equal protection? Section 1 equal protection? No, because it's not in the complaint. You didn't move for any equal protection summary judgment, even though the District Court, after the screening, had acknowledged or referenced that there may be an equal protection claim here. I'm curious about that. To the extent the right to vote is analyzed under an equal protection analysis, in this case, because we're talking about a convicted felon under Section 2 of the Equal Protection Clause, we did, in my mind, move under the Equal Protection Clause. We did not move. Where in your mind? I mean, where in your papers did you move? The right, the analysis of the right to vote is a part of the equal protection analysis. So in arguing that he had no right to vote, essentially we're arguing that he has no right under the Equal Protection Clause. Essentially, that's where the right to vote argument comes from, sort of an equal protection argument in general. It looks like that to me. That's the way we interpreted it. So let's say there are two equal protection claims. Yes. Let's just pretend. And one is focused on the constitutional, fundamental constitutional right to vote. The other would be focused on the statutory right to vote given by California. And I think what we're having trouble with, it's clear from looking at your papers, is that you made a kind of argument about equal protection regarding the constitutional right to vote. But it's not so clear that you said anything about the disparate treatment, I'll call it for a second, the disparate treatment right to vote. It doesn't look like you moved on that particular equal protection basis. I agree. And that's because no such claim is alleged in this complaint. There are no allegations of disparate treatment that Mr. Wilkins was similarly situated to anybody. I'm sorry to interrupt you, but I do remember at least once where he said he didn't get a ballot but so-and-so did. How is that not sufficient? Inmate Menifee received a ballot is the only allegation. Inmate Menifee, there's no indication he's similarly situated to Mr. Wilkins. Mr. Wilkins was trying to register to vote. Mr. Menifee was handed a ballot, apparently already registered to vote. They're not similarly situated. What Mr. Wilkins is describing is a series of snafus. But he has not established that Menifee was in any way similarly situated to him and that Mr. Wilkins was attempting to register to vote. Let's talk about the request that Mr. Wilkins made. I think he attempted discovery, but there was no response by the defendants. Why not? Mr. Wilkins sent informal letters to the defendants indicating he could not do discovery for whatever reason, he could not engage in formal discovery. He wasn't given the RAND notice to start there. Should not he have been given the RAND notice? If he was entitled to RAND notice, how do you get around that? He was given RAND notice twice, once by the court just less than six months before. But you know the case law. I do. I'm familiar with Your Honor's participation in that. I would say that this case does present a slightly different factual scenario in that RAND notice was given both by the court within six months and then by counsel at the time the motion was filed and served on Mr. Wilkins at the outset and in the beginning of the document. Well, by counsel, though, that's also not enough to meet the RAND notice. It wasn't separate from the court. So let's just assume that he wasn't given the RAND notice. What happens then? In our mind, the record is sufficient for this court to overlook that error. And the reason I say that is, number one, Mr. Wilkins, by virtue of filing a pre-action request for discovery, demonstrated his knowledge of how to oppose and proceed on a motion and opposing a motion for summary judgment. He specifically cited to multiple code sections of the FRCP and asked for pre-action discovery, knowing that he would need to conduct discovery to oppose a motion for summary judgment. I'd also say that the only fact that matters here is the fact that Mr. Wilkins is a convicted felon, because the only issue that's really in this complaint that should control is whether he had a federal right to vote, a fundamental right to vote under federal law. There's a lot of after-the-fact speculation as to what's in this complaint by appointed counsel, but we can only deal with the pleadings that were presented. But he did make requests, and I know in your briefing you said, though, that we couldn't understand him, but that seems to defy credulity a bit, because it does look like he was being specific enough that he should have been getting some responses. So it seems like you're saying, well, he got RAND notice, so we didn't have to, but if he didn't get RAND notice, we couldn't understand his request. Could you address that? I'd respond to that two ways. One, Mr. Wilkins has filed many lawsuits against my client. I've been litigating against him for years. I receive hundreds upon hundreds upon hundreds of letters from him asking for assistance and all sorts of things. In light of that context, it's completely reasonable to view an informal letter as just what that is. But more importantly, Mr. Wilkins had a remedy. He was told that he could file a motion to compel. He wrote, I believe, in his letter that if he did not receive a response, he was going to seek court involvement, but he never did. He knew he had the right to. He had already filed an application with the court for more time, in this case, demonstrating his knowledge he could. He never asked the court for more time. He never identified discovery that would have helped him in this case. He had the opportunity. He had months upon months to do discovery. In effect, the decision was issued in June of 2012, I believe. Even in the period after he submitted an opposition, he never raised the issue with the court. He had a remedy. He chose not to pursue it. So despite the fact that you could understand his request, you relied on the fact that you shouldn't have to because why? Because it was an informal letter. Mr. Wilkins indicated in his letter that he cannot do formal discovery, and if I responded to every letter by Mr. Wilkins, I'd have to hire a lot more people in my law office. That is why it was not responded to. If he thought it was actually FRCP discovery, he could have written a letter indicating as such or filed a motion to compel, but he did not, and he was aware of that obligation on his part. If I conclude that there was rand notice error here, do I then undertake a harmless error analysis? I think if the court is going to read into the complaint other causes of action. My worry is what my colleague, I guess, expressed to you and why I asked you the question in the first place. My worry is that I'm not sure that there was really rand notice given on an equal protection claim of a statutory benefit. So if I believe there was a rand notice error, can I excuse the error for harmless error? I think you can. Why? Because Mr. Wilkins demonstrated he knew what he needed to do to oppose a motion for summary judgment. In fact, I believe the court's ruling, the district court's ruling on his motion seeking clarification indicated to him, he had asked, can I bring a conspiracy claim? And the court said, yes, you can bring a conspiracy claim if you can set forth the underlying factual allegations to support an equal protection claim. So he was on notice. I don't believe that claim is even in the complaint. So we should just then proceed then instead of with rand notices, I think according to which argument is if we know that they're frequent filers, that's enough? Well, I didn't say that. I have not requested the court take judicial notice of his other filings. I'm saying the record in this case. Well, but you just said the context and we know and you're not putting that in front of us. But I'm just trying to figure out then how do we deal with the lack of rand notice. When I asked you, you point to, well, we knew that he had been filing a lot. I'm trying to figure out what we do because I think clear rules are helpful and that's the whole purpose, I think, of the rand notice. And in this case, if we say, oh, well, rand notice, even though it was possibly defective or let's say it was insufficient, we should, the rule should be, well, he files a lot of things he should have known. I don't think that should be the rule. I think the fact that he demonstrated by filing a motion for pre-action discovery and the fact that he submitted grievances in a letter to the court demonstrates this in. Was there a response to the pre-action discovery request? The court denied his request. But my view of that is it demonstrates his knowledge. Well, my worry is this. First, it seems to me that if he got rand notice, that I could say was rand notice, that he may well have shown by affidavit that another inmate was similarly situated to himself. And he didn't get the chance to do that. And that would have been something he could have done. Way, what do you respond to that? What I respond to that is, again, that I don't read that claim in this complaint. So after the fact to speculate as to what he may have done if there happened to exist evidence, I don't, I think it's a reverse. Well, frankly, I think you have to go there because if I'm going to find there's rand notice error and then you're going to allow me, which I think you had to, that I can see if there's harmless error, then I'm going to look at what could he have done had he got the notice, which I suggest that he has to have in my question. First is he could have got an affidavit saying there was somebody in a similar situation as him. Another thing he could have done, maybe he could have filed a motion to compel rather than doing nothing. And this to have the district court say in a summary judgment, well, he didn't quite like it. I think he was advised of the right to file a motion to compel, in fact, noted it himself. So in terms of the discovery that he did not receive, he had access to the inmates. Well, my worry is this, that he didn't know or understand that he needed to provide evidence in some other form or another in order not to lose. That's my worry. If that were true, he would not have filed an action for pre-action discovery because there's no purpose in doing so other than to try to seek discovery. Now, he had an opportunity to do actual discovery. He had an opportunity to ask the court for more time. He chose not to. He had the time to do so. There's no application here where he said to the court, I need more time to present evidence. And I think the reason for that is in his opposition to the motion for summary judgment plainly demonstrates these claims don't exist in this complaint. There is no procedural due process claim alleged, and there's no equal protection section 1 claim alleged. If they were alleged in opposition to our motion, he would have said to the court before it entered judgment, wait a second. They haven't even moved to dismiss these claims. Mr. Wilkins agrees with our interpretation of his complaint that those claims don't exist. The thing is we keep calling it a RAND notice, but it's not only a RAND notice, it's a notice when you've made your summary judgment motion, even if you had given a RAND notice, which is problematic. So your summary judgment certainly didn't ask for summary judgment on these other alleged causes of action, whatever they are. The district court thought there was some there and granted summary judgment against them, right? Correct. But you didn't think so, and so you didn't move for summary judgment. So, you know, the trouble with this case is it sounds like you're saying that he needs to turn square corners when he deals with you in the court. But you all don't have to necessarily turn square corners when you deal with him. Right. So you can send a sort of wishy sort of RAND notice. It isn't RAND notice. The court can do the same thing, send him improper notices. But he better get it right when he sends an informal request for discovery. I'd like all the paperwork that backs this up. Sort of ignore that because that's not done quite right. That's what I think troubling in this case. I view it a little different, Your Honor, in terms of what's actually in the complaint. And we should not be held to a standard to move to claims that are not identified in the complaint. Okay. Thank you very much for your argument, Counselor. Thank you. We have another one presenting the rebuttal. Ms. Joy, we'll hear from you. Your Honors, I'd like to make four points in response. First, the error here was not harmless error. The district court raised Mr. Wilkins' equal protection claim on summary judgment Mr. Wilkins had no notice that that particular claim was at issue, and appellees have proffered no evidence that would undercut his equal protection claim. They ignored all of his ---- What they did say is what the district court did was not even in his pleadings. That's incorrect, Your Honor. He alleged on page 82 of the second volume of the excerpt of the record, he alleged that his constitutional rights to vote, equal protection, and due process were denied in violation. He alleged that he was treated differently from inmates Hampton and Menefee in his amended complaint. Both of those inmates were detained. And he also alleged that he was treated differently from non-detained eligible voters. And the district court even acknowledged that Mr. Wilkins had stated a cognizable claim for all of those claims in its order to defendants to file a dispositive motion. So Mr. Wilkins had no notice that that equal protection claim was at issue, and he was deprived of an opportunity to defend that claim. And you're still talking about, then, the equal protection claim arising from a statutory right? Yes, Your Honor, for that claim, yes. Rather than the fundamental right to vote? He alleged both, but as far as equal protection goes, both his fundamental right to vote and his state, in the alternative, his state right to vote. With regard to the motion to compel, Mr. Wilkins actually, in July and August, in his letters to counsel, which were also filed with the court, informed them that he had no legal documents. He did not have the district court's notice, if you could call it a RAND notice, and he did not have the district court's order informing him of his duty to, before filing a motion to compel, to write a letter and offer the jail officials one last opportunity to comply. Didn't the district court provide your client with a notice regarding Rule 56 some six months before the summary judgment was filed? That's correct, Your Honor. And as this court held in RAND and in Woods v. Carey, that is insufficient. It must be filed at the same time as the dispositive motion is filed, and it must be filed not within the papers but concurrently as a separate document, and it must be filed at the discretion, at the direction of the district court. None of those requirements of RAND were met here. The reason I ask the question is counsel seemed to base much of his argument on the fact that the district court six months prior had told him all about the Rule 56 motion and the procedure thereto. That's correct, Your Honor. And this court has held that that is not sufficient. Six months before is exactly why the reason why RAND v. Roland must be filed at the same time is that pro se, I'm sorry, incarcerated litigants face particular difficulties, such as jail officials taking away all of their legal documents, which is exactly what happened here. Mr. Wilkins didn't even have that notice to refer to. He clearly did not understand the consequences of Rule 56. In his opposition to summary judgment, he asked for more discovery. He said, as evidence will show, he clearly did not understand. And that's exactly why RAND was so necessary in this case. I'd like to make one final point in response to Your Honor's question about Harvey. The right to be reenfranchised is a statutory benefit. But once reenfranchised, the right to vote is a federally protected right. It is the fundamental right to vote. And for all of those reasons, this Court should ask this Court to reverse it. I just have one last question, if I could. If this Court reverses on the grant of summary judgment on one or more claims because of insufficient RAND notice, what happens when it goes back to the district court? The district court should allow Mr. Wilkins to engage fully and fairly in the discovery process and to be allowed his day in court. All right. Thank you. Thank you. Thank you very much, ma'am. Thank you, both counsel and set of counsel, for your fine arguments today. Case 12-16583, Wilkins v. County of Alameda, is submitted.
judges: Fernandez, Smith, Murguia